IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>JEFFREY PAUL MADISON, ET AL | CRIMINAL NO.  4:22-CR-034-O |

### SENTENCING MEMORAMDUM AS TO ALL DEFENDANTS

The government files this sentencing memorandum as to all defendants in an effort to minimize duplicative sentencing issues and to describe to the Court, and all defendants, at the same time, issues that may be relevant to the sentencings of these offenders.[1]

The defendants engaged in a massive and complex kickback scheme. These kickbacks were disguised in a variety of ways, including, but not limited to fraudulent lease payments, salary offsets, payments to third-parties, commissions, and ownership interests in certain laboratories. As a result of these kickbacks, these laboratories were able to submit more than $300 million in billing to federal government healthcare programs, including Medicare, Tricare, and the Railroad Retirement Board. These same federal programs made payments of more than $10.4 million to Unified and Spectrum.

---

[1] Counsel for the government conferred, or attempted to confer, with defense counsel for each defendant who cooperated with the government, regarding the filing of this omnibus, public filing. No counsel expressed concern.

Government's Sentencing Memorandum - Page 1

Each of the eleven defendants has pled guilty and the Presentence Reports have been issued as to eight defendants: Jeffrey Madison, Sherman Kennerson, Mark Boggess, Abraham Philips, Laura Ortiz, Keith Wichinski, Juan Rojas, Dr. Jose Maldonado, and Dr. Eduardo Canova.[2]  Sentencings are set to begin on June 17, 2022.

### Timeline of Investigation, Cooperation and Pleas

The investigation into this matter began in earnest in September 2018.[3]  In October 2018, the government approached defendant Keith Wichinski and sought his cooperation.  Wichinski was a nurse practitioner who had personally taken bribes from codefendants and referred samples to Unified and Spectrum as a result of those bribes.  Wichinski agreed to assist the government.  Wichinski has been the subject of another, separate investigation and was represented by his counsel, Jason Davis, at that time.  Wichinski cooperated with agents through lengthy debriefs and by providing documents and materials to the investigative team.  Wichinski admitted his role in the offense and identified others involved in the offense, with a specific focus on codefendant David Lizcano.  At the request of agents, Wichinski placed recorded calls to targets of the investigation and engaged in face-to-face meetings with other targets.  As a result of Wichinski's cooperation, agents were able to introduce a new and clean confidential human source into the investigation, which proved useful.  As a result of Wichinski's cooperation, agents were able to establish probable cause for the wiretaps in the case.

---

[2] The PSR for David Lizcano's is set to be issued May 26, 2022, and the PSR for Biby Ancy Kurian is scheduled to be issued on June 2, 2022.

[3] Prior to this, investigators laboriously examined claims data and financial data to identify the potential identities of the kickback scheme.

**Government's Sentencing Memorandum - Page 2**

In the first half of 2019, agents applied for and received authorization to utilize court-approved Title-III wiretaps. First, the agents received authorization to intercept communications carried by the telephones utilized by Lizcano and Laura Ortiz. These two defendants – Lizcano and Ortiz – operated a business that served as the primary marketing arm in the overall kickback scheme. Agents received authorization to intercept their calls for the period between February 14, 2019, and March 15, 2019. As result of information gleaned from those recordings, agents then applied for and received authorization to intercept calls for another 30 days on Lizcano's phone and were able to spin off to another marketer's telephone, Juan Rojas. Rojas had worked for Lizcano and was operating independently in some respects. These wiretaps occurred between March 15, 2019, and April 13, 2019.

At the conclusion of the wiretaps, agents, now armed with significant and unique (for health care fraud purposes) evidence against Rojas, approached Rojas and sought his cooperation.[4] Realizing the weight of the case against him, Rojas immediately confessed to his own criminal activities and agreed to cooperate with the government. Agents utilized Rojas as a source extensively. Rojas never wavered in this cooperation or his own admission of guilt. At the agents' request, Rojas permitted the agents to utilize a consensual T-III wiretap on his cellular telephone between July 2019 and December 2019.

---

[4] The use of wiretaps in a health care fraud case, let alone a fraud case, is exceedingly rare. In 2019, federal judges approved over 1,400 wiretaps across the country. Wiretaps targeting narcotics offenses, among other crimes, accounted for 76% of all reported federal wiretaps. Less than 1% listed fraud as the primary offense that was being investigated.

**Government's Sentencing Memorandum - Page 3**

Rojas made recorded calls, engaged in direct communications with targets of the investigation, provided documentary and other evidence to the agents, and made controlled payments to other conspirators in the scheme. Rojas's cooperation continues today.

In January 2020, agents approached Mark Boggess and sought his cooperation. Boggess had worked for Madison and Kennerson and was knowledgeable about the inner-workings of the target laboratories in this case, Unified, Spectrum, and Reliable. After retaining counsel, Boggess debriefed with agents on multiple occasions and provided information to the agents that was determined to be truthful. The government sought to negotiate a plea deal with Boggess at several points between January 2020 and the date of indictment. Boggess refused those offers.

In January 2020, agents visited another laboratory company owned by Biby Ancy Kurian to conduct an interview and seek her cooperation. Kurian was one of the owners and operators of Reliable Labs. After retaining counsel, she met with agents on June 12, 2020. The government offered Kurian a plea deal, which she refused. Agents believe Kurian was deceptive and not truthful during this interview.

In January 2020, agents approached Abraham Philips, who was also one of the owners and operators of Reliable Labs. After retaining counsel and several meetings, Philips agreed to cooperate with the government. His assistance was critical in furthering the investigation as it related to Reliable, as that aspect of the case was more complex than other parts of the overall investigation. In particular, his assistance assisted the agents in later securing the guilty pleas of codefendants Sherman Kennerson and Kurian.

In August 2019, in New Jersey, agents attempted to interview Jeffery Madison and Sherman Kennerson, who were both represented by counsel, in conjunction with an investigation out of the District of New Jersey. Neither Madison nor Kennerson assisted with the instant investigation at this time. Ten months later, on June 30, 2020, agents interviewed defendants Madison and Kennerson, who were again both represented by counsel and had already entered into plea agreements in New Jersey case. Madison was the primary target of the instant investigation and owned and operated each of the laboratories that were the focus of the prosecution. Kennerson was deeply involved with Reliable Labs and had an ownership interest in the one of the other two laboratories. These debriefs with Madison and Kennerson were helpful to the government in that both Madison and Kennerson confirmed many known facts and could not provide a plausible explanation for alleged criminal activities. Yet, when the government sought to negotiate a plea deal with Madison and Kennerson following these meetings, the parties were unable to reach an agreement.

In December 2020, agents approached David Lizcano, the primary marketer in the scheme, and sought his cooperation. Lizcano provided false information to the agents and refused to cooperate and stated he would seek legal representation. Lizcano was provided with contact information to the United States Attorney's Office, however, he never contacted the prosecution team nor hired counsel until his arrest in February 2022.

In September 2021, the government approached defendant Laura Ortiz. Ortiz is the sister and former employee of David Lizcano. After retaining counsel and meeting with agents, Ortiz agreed to cooperate with the government in January 2022 and then agreed to

**Government's Sentencing Memorandum - Page 5**

plead guilty to her role in the offense in early February 2022. In particular, Ortiz's cooperation was critical in building the case against Lizcano, who the government anticipated would be non-cooperative.

In early February 2022, agents separately approached Dr. Eduardo Canova and Dr. Jose Maldonado. After each retained counsel and after each set of defense attorneys met with the prosecution team, Drs. Canova and Maldonado agreed to admit to each of their respective roles in the offenses and cooperated with agents. Canova signed plea papers on the same day that the government presented the case to the Grand Jury, on February 9, 2022.[5] Maldonado signed plea papers on February 10, 2022. Canova and Maldonado were tangentially aware of each other and that each were cooperating with the government. The government does not believe that one plea led to the other as they were both proceeding at roughly the same time and same pace.

Following the issuance of the indictment, Boggess reapproached the government and sought a plea deal. The parties were able to enter into an agreement on February 13, 2022 – approximately four days after the indictment was issued.

On March 10, 2022, approximately one month after the Grand Jury had indicted Madison, he agreed to plead guilty as well.

---

[5] As a result, five defendants (Wichinski, Rojas, Philips, Ortiz, and Canova) had signed plea papers by the date of indictment. Two more (Maldonado and Boggess) followed within a week. This was a deliberate government strategy to avoid delays once indicted, to avoid thorny sentencing disputes, and to focus the energy of the investigative team on the most culpable actors.

**Government's Sentencing Memorandum - Page 6**

The next day, on March 11, 2022, the government reached out to Kennerson's counsel. Kennerson had not been included in the initial indictment, but the government believed with the pleas discussed above, and the extensive Factual Resumes then on file that discussed Kennerson's role, that there were now more than sufficient facts to charge and convict Kennerson. Through counsel, Kennerson agreed, and he executed plea papers the following week, on March 15, 2022.

David Lizcano, the primary marketer, who acted as a hub of this conspiracy, was arrested on February 9, 2022, in San Antonio. It took several weeks for him to be transported to the Northern District, with his first appearance occurring on March 21, 2022. During those intervening weeks, Lizcano obtained defense counsel, who began negotiating with the government. The prosecution team met with Lizcano on March 21, 2022, and provided him with highlights of the evidence that had been obtained against him. Ten days later, Lizcano executed plea papers.

On April 5, 2022, Kurian executed plea papers. She was the last defendant to plead guilty.

## Relative Culpability

The government believes that the defendants can be grouped into three categories: (1) lab owners, (2) marketers, and (3) medical professionals. The following chart outlines those roles.

| Lab Owners | Marketers | Medical Professionals |
|---|---|---|
| Jeffrey Madison | David Lizcano | Dr. Eduardo Canova |
| Sherman Kennerson | Juan Rojas | Dr. Jose Maldonado |
| Biby Ancy Kurian | Laura Ortiz | Keith Wichinski |
| Abraham Philips | | |
| Mark Boggess | | |

The lab owners, in conjunction with the marketers, devised the overall kickback scheme. Madison served as the Managing Partner and majority owner of Unified and Spectrum. Madison's responsibilities at Unified and Spectrum included coordinating marketing and sales, as well as coordinating with insurance billing services and payments. Madison is, without question, the most culpable of the lab owners and he profited to the greatest degree of any lab owner. He served as the connective tissue to the other lab owners – having been long-time friends with Kennerson, employing Boggess, and partnering with Kurian and Philips. Madison committed similar offenses in New Jersey and was one of two driving forces (along with Lizcano) in the overall scheme.[6]

Kennerson was a financial investor in these businesses and assisted with certain tasks. Madison and Kennerson were life-long friends. Kennerson committed similar offenses in New Jersey.[7] Kennerson was far more involved in Reliable than in Unified and Spectrum. Kennerson invested $30,000 in Unified and received a 3% (3 unit) stake for his investment.

---

[6]     Madison has not yet been sentenced in New Jersey. *See* Case No. 2:20-CR-449-BRM. There is currently no date on the docket for the sentencing.

[7]     Kennerson has not yet been sentenced in New Jersey. *See* Case No. 2:20-CR-449-BRM. There is currently no date on the docket for the sentencing.

Kennerson invested following a presentation by Madison which projected a significant return on investment. Kennerson claims he only received $50,000 or $60,000 in return for his investment in Unified and Spectrum. Kennerson owned 15% of Reliable.

Boggess was the Chief Operations Officer at Spectrum and Unified. Boggess's responsibilities included arranging payments for and marketers, and lease payments to medical providers. Boggess, who retained small ownership interests in the laboratories, was primarily an employee, working at the direction of the other owners.

Defendant Biby Ancy Kurian was a partial owner and the managing partner of Reliable. Kurian had prior experience managing laboratories (Star Labs and Lotus Labs) and was responsible for the day-to-day lab operations at Reliable. Defendant Abraham Philips was a partial owner of Reliable and was responsible for finding new customers and marketing. Philips was also a financial investor and owner in Reliable. Kurian and Philips had no ownership stake in Unified and Spectrum, but their actions criminally benefitted those entities in exchange for their own profits. They each profited from their criminal ventures with Madison. As noted above, Philips cooperated with the government at an early stage, while Kurian refused and misled agents.

With regards to marketers, Lizcano is the most culpable. He profited to the greatest degree. He personally devised many of the kickback schemes that were utilized in this case. Along with Madison, he is the most culpable of all defendants. Lizcano brought in and employed his sister and co-defendant Laura Ortiz. He trained Juan Rojas. During the investigation, Lizcano refused to cooperate with investigating agents and took steps to discourage cooperation by others.

**Government's Sentencing Memorandum - Page 9**

Lizcano was the only defendant that agents felt it was necessary to arrest without warning, given his prior actions. In addition, Lizcano was detained for the first several weeks following his arrest.

Laura Ortiz worked for Lizcano and often served as the primary communicator with laboratories and medical providers. Ortiz was paid a reasonable salary for her work ($75,000 per year) but did not otherwise profit. She worked at the direction of Lizcano.

Juan Rojas was a marketer, much like Lizcano. He was trained by Lizcano, and eventually operated independently of Lizcano with respect to certain medical professionals. But for his cooperation, Rojas would be viewed in a similar but less culpable way as Lizcano. At some point during the investigation, Lizcano became aware, or at least suspected Rojas's cooperation with the government, and sent messages that Rojas interpreted as threatening.

With regards to the medical professionals, in this case, they served as the key that unlocked the pandora's box to the overall fraud. No amount of scheming, clever planning, or conspiratorial intent by the lab owners or marketers would accomplish any criminal ends without a medical professional's willing signatures on the tests that were ordered. In this regard, the medical professionals who have so far been charged, are equally culpable with each other, with potential stratification based on the volume of kickbacks received and the amount billed as a result of their approvals. The following chart helps summarize those differences.

| Medical Provider | Kickbacks Received | Amount Billed by Unified and Spectrum to Fed. Programs Related to Their Approvals | Fed. Programs Funds Paid to Unified and Spectrum Related to Their Approvals |
|---|---|---|---|
| Wichinski | $ 255,426 | $ 21,671,901 | $ 801,121 |
| Dr. Canova | $ 337,602 | $ 15,572,623 | $ 585,537 |
| Dr. Maldonado | $ 427,000 | $ 15,464,819 | $ 294,115 |

Of course, as discussed above and more extensively in under-seal filings, Wichinski was a long-time cooperator and assisted the government is more substantive manner than Dr. Maldonado and Dr. Canova. As a result, his sentence should account for that cooperation.

Respectfully submitted,

CHAD MEACHAM
UNITED STATES ATTORNEY

*s/ P.J. Meitl*
P.J. MEITL
Assistant United States Attorney
D.C. Bar No. 502391
801 Cherry Street, 17th Floor
Fort Worth, Texas 76102
Telephone: 817.252.5272
E-mail: philip.meitl@usdoj.gov

CERTIFICATE OF SERVICE

I hereby certify that on May 24, 2022, I electronically filed the foregoing document with the clerk for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. The electronic case filing system sent a "Notice of Electronic Filing" to the following attorney of record who has consented in writing to accept this Notice as service of this document by electronic means.

*s/ P.J. Meitl*
P.J. MEITL
Assistant United States Attorney